Our next case for argument is 23-2427, Range of Motion Products v. Armaid Company. Good morning, Your Honors. Justin Finger for Range of Motion Products. May it please the Court. So the heart of this case is that the district court said many of the Roll Flex's individual features have a functional purpose and thus are beyond the scope of the claim in the D-155 patent. That's Appendix 20. So we fundamentally disagree with this construction. The individual features of the product are not beyond the scope of the claim of the design patent. Only the functional purpose of those features is what is beyond the scope of the claim. Counsel, do you disagree with any of the differences identified by the district court? We don't disagree with those differences, but we disagree with the import that the district court accorded those differences. Those were very minor differences and don't think that those were appropriate to pay attention to in the summary judgment analysis. So the district court's error in this case is straight out of this court's decision in sport dimension, where the sport dimension court said, and I quote, while it may be appropriate to note particular functional features of a design, it is improper to wholly exclude structural elements of the design patent claim. What did the district court wholly exclude? I don't see that it wholly excluded. I mean, it was a little squishy on how it was applying its claim construction, but I don't see that anything was wholly excluded. So show me in its opinion where you think it wholly excluded the base, or wholly excluded the arm, or wholly excluded something. Absolutely, Your Honor. So yeah, you can look at the district court's own statements to see what was excluded. Okay, so the first is Appendix 4, Footnote 4. When the district court's opinion is talking about features, this is a footnote in the opinion, it says, when I reference features or elements, I'm referencing a component part of the devices and patent illustrations. That's Appendix 4, Footnote 4. So we know when the district court's opinion talks about features or elements, it's talking about a structural component of the devices. That's the first statement where we know that it's talking about features. The next statement, like I just said, many of the Rolflex's individual features have a functional purpose and thus are beyond the scope of the claim in the D-155 patent. Well, but where did they eliminate something? I mean, I still, you haven't gotten me there yet. Right, right. So the individual features, when the district court is talking about the features, they're talking about the elements or the component parts. That's Appendix 20, right? So then, later in the opinion, the district court then says, how do we know what features the district court is eliminating? The district court says, Terry Cross's affidavit sheds light- I want a page. I want you to take me to a page and a sentence. Appendix 20. Appendix 20. I'll let you get that. Okay, Appendix 20. Yep. Yep. Okay. So in Appendix 20, we have, in the beginning, this is where the district court gets into the functional analysis, and it starts with, Terry Cross's affidavit sheds light on which features of the D-155 patent are driven by functional considerations, and then it lists the features. So we have the overall clamshell appearance of the arms is driven by functional considerations. We have the inverted mushroom base is driven by functional considerations. That's all at Appendix 20. And then we know from that footnote at the beginning of the opinion that when the district court says features or elements, it's talking about a component part of the devices. But the problem is, no, on page 20 to 21, the district said, right at the bottom, in reaching this conclusion, I do not wholly exclude functional features, but I consider instead how those features contribute to the overall ornamentality. That sounds like a correct statement of law, and it sounds at odds with what you're saying now. So it's a correct statement of law, but it is not, the district court did not understand what that statement of law was. And if we look at the district court's opinion, so the way the district court's analysis worked, it viewed the features of the devices as separable. So you have the handles, you have the arms, you have the hinge apparatus, and you have the base. And then it assigned weights to each of those. So it said, we have the handles. Those are largely ornamental. I can't discern a functional purpose for the hollowness of the handles, or the way that the fixed arm connects to the hinge apparatus. I can't quite discern a functional purpose for that. So what do you contend the district court should have done instead of what it did in its opinion? So this is what the district court should have done instead, and should have identified the functional elements. You still need to identify the functional elements, because they're not covered in the general abstract. But then you have to identify the ornamental aspects adorning those functional elements. And so I would analogize actually to this court's 2020 decision in Lennard. So in Lennard, the district court, and this was approved by the federal circuit, the district court construed a design patent claim for a pencil-shaped chalk holder. I'm sorry, isn't that exactly what the district court is doing on 20 and 21? On 20, which he pointed us to, he talks about things that have a functional purpose. Then he says, I don't exclude them altogether. To be sure, some features appear to be largely ornamental. And then he specifically lists what are the largely ornamental ones. Right, so let's talk about those features that he refers to as largely ornamental. That is the hollowness of the length of the handles, the thick-ridged outline, the precise shape of the connector pivot, and the shape of the portion of the device where the hinge apparatus connects to the fixed arm. That's a quote. He did not identify the appearance of the arms. And that is what they did in Lennard. That's what this court did in Lennard, is it looked at the pencil-shaped chalk holder and said, we're going to break it up into functional elements. So what about the arms do you think is ornamental? You agree the arms are functional. They serve a functional purpose, but their appearance is not dictated by function. Well, what did you tell the district court that you wanted it construed as? As the appearance. We wanted it construed as the ornamental design, and we said the ornamental design of the arms and the overall ornamental appearance is the appearance of the arms. What they look like. Not their functional purpose, right? Well how do you divide up what's ornamental and what's not ornamental? You didn't tell the district court their ornamental, the ornamental aspect is, I mean he did look at the thickness, right? Isn't that what he said? No, he did not. That was the thick, ridged outline. So the parties actually agree here what the district court identified as the largely ornamental features. What's ornamental on the arms? Their appearance. That's a nonsense word. Tell me specifically on this design pattern, what of the appearance is ornamental? Their shape. Their shape is ornamental. It's not driven by function. Well some of it's driven by function. The appearance is absolutely not driven by function. You're going around and around. Some of the arms' shape is clearly functional. Respectfully, we disagree. Well that's just inconsistent with the record. There's plenty of testimony that says we made the arms this way so they could fit not just an arm but a leg, and so they're curved like that. Some of the curve is functional. It's not all ornamental. So the problem I think we have here is this was decided on summary judgment. Well first of all, the problem is you have failed to give a specific claim construction that would allow us to determine what's ornamental and what's not. You just say the appearance. Well that's just like your dumb patent, which just says we, sorry, that says we claim- You said that out loud. That was not his ear. I'm perfectly content saying that out loud. I mean when you look at the front of your blue brief and you say the claim is this picture. Well sure, that's the way you do design patents, but when you're doing claim construction, we use words, and you have to give them words, and just saying overall appearance is not words. Well respectively, what the claim in the design patent says is the ornamental design, right? So that's a word. But the way we would construe that word is the ornamental design is the appearance, and that's found throughout- What of the appearance? Let's talk about patterns again. The shape. The shape. So that's found throughout this court's precedent. The appearance construction is throughout this court's precedent. Are you saying the shape can't also be functional? If it's functional, then it's invalid, right? If the overall, if the shape of a- Or it shouldn't have been allowed in the first place. Respectively, there's a presumption of validity on the design patent. And so if the patent is valid, then all of the features shown in the patent have to have a protectable ornamental aspects, and that's the appearance, and that's- Not if they're functional. If the appearance is dictated by function, certainly it's an invalid claim, but that is not what the issue is here. We're trying, when we're construing the claim, we're construing, we're just identifying the functional aspects, and we're saying what are the ornamental attributes of these functional aspects, and that's not what the district court did. So if I could just point to some cases. So respectfully, we have throughout this court's precedent, so straight from Gorham v. White, 1871 Supreme Court case on design patents. Identity of appearance or sameness of effect upon the eye is the main test for substantial identity of design. The two need not be exactly the same, right? Next in Lenard-Toys, we have in construing a design patent claim, the scope of the claim design encompasses its visual appearance as a whole, and the particular visual impression it creates. And then, and Lenard, overall appearance of the design. So this appearance construction is not just a word, it's found throughout this court's precedent, and the appearances, saying the appearance is actually a very simple way to explain to a jury what the ornamental aspects are. So my colleague asked you about pointing to specific pages where there are alleged errors in the district court decision. Is there any other page you would like to point us to? Absolutely. Okay. Absolutely. I'd love to get that page. So I pointed to appendix 20, I pointed to appendix 4, footnote 4, and then I would also point to the district court's summary judgment analysis. The district court's summary judgment analysis, that's on appendix 26. When comparing the patented design and the accused product side by side, the district court said the D-155 patent and the Arm A-2 look quite similar, and the fixed arm is the most noticeable feature. Those are both on appendix 26. But then somehow concludes on that same page that they're plainly dissimilar. But you're skipping words in what's actually listed on appendix page 26. It talks about at a conceptual level, they look quite similar. Absolutely. So in this case, they're similar on both levels. They are similar on a conceptual level because both the accused product and the patented product have the same general structural features. Both have a handle, both have the arms, the fixed arm and the movable arm. Both have a hinge apparatus, both have a base, right? They are similar on a conceptual level, but they are also similar on an appearance level if we're looking at the appearance of the arms. I mean, the arms of the accused product could fit directly inside the design patent claim, and that's pictured in our reply brief. I don't have the site right off the top of my head, but there are actual appearances in the overall visual impression. So yes, the district court's right. There are conceptual similarities between these two, but that is not why we're saying there's infringement. We're saying there's infringement because of the appearance, because they look identical. All right, counsel, do you want to save some of your time for rebuttal? I actually, so I believe this is from my seven minutes or was this a 15?  I will reserve the rest of my time for rebuttal. Okay. Thank you. Counsel, how do I say your last name? Fougere. Mr. Fougere, please proceed. May it please the court. I'd like to start where Mr. Tinger was focused, and in particular on the difference between the ornamental and the functional aspects of the two pieces of the design that they've made a feature of their appeal. He said that the shape of the arms is ornamental. That's not true. The record is exactly to the contrary. The district court repeatedly said that because this design is meant to fit different limbs, legs, and things, it actually has an increased curve. That's at appendix three. It's at appendix 20, and it's in the joint appendix, where in our statement of undisputed facts we said this is form following function, and they did not dispute it. The particular shape of the arms is driven by function, and the more fundamental problem is exactly what you said, Judge Hughes. District courts have discretion about how much to write in design patent cases. You said that in Egyptian Goddess. They gave the district court, they're the plaintiffs. They've sued us for patent infringement. They gave him nothing to work with. They did not come in and say this part of the base is ornamental, or the dimensions are ornamental. Their entire case has been essentially what this court has repeatedly said is not good enough, which is they look similar at a broad conceptual level. Wait, what is the standard, first off, for us to consider here? What is the standard we're looking at for this question? For the non-infringement question or the... Yeah, non-infringement on summary judgment, because so far you're talking mostly about the non-infringement. You haven't really dove into the claim construction, so let's focus on the non-infringement. What's the standard for that? The ordinary observer test. And who's the ordinary observer? Just a random person, right? It's not the ordinary designer. That's validity. The ordinary observer is the random observer of these two products. It's an observer familiar with the products and the prior art. So it's not just anybody off the street. It's somebody who... It's not an ordinary designer. Our recent case law made it crystal clear. The ordinary observer is the ordinary person thing. It's not the designer. Correct?   Okay, so the ordinary observer approaches these two products. Now these are massagers, correct? Yes. And so the ordinary person or ordinary observer is looking at these two designs, and what are they supposed to... How do they decide whether there's infringement? What is the exact infringement test? Right. The question specifically is, are the ornamental aspects substantially similar? No, I don't think that's the question. I think it's the overall appearance, isn't it? Isn't the exact... The overall appearance of the ornamental aspects, absolutely. The overall appearance... Why don't you precisely quote me what the test is? Why don't you find something you can quote it from? Because an Egyptian goddess, we say, whether two designs are substantially the same, such that the resemblance would, quote, deceive such an ordinary... Such an observer and inducing him to purchase one, supposing it to be the other. That's a direct quote from our in-bank Egyptian goddess case, right? Yes. Whether the two designs are substantially the same, such that the resemblance would deceive an ordinary inducer... I'm sorry. Deceive such an ordinary... I can't even speak. Deceive such an observer, inducing him to purchase one, supposing it to be the other. That's what we said the test for infringement was, in-bank, in Egyptian goddess. Yes, but what is claimed is the ornamental features, and that's where... But it doesn't say what's claimed. It says the two designs, right? Small differences are likely to be important to the eye of the ordinary observer. In the... Yeah. In the... I mean, it's infringement, which is always measured against what the scope of the claim is, and that's no different here than... Well, but we have said it's the overall appearance, correct? The overall appearance of the ornamental features. I don't have a specific quotation. Where do we say the overall appearance of the ornamental features? I have it as the overall appearance of the design. Where is it the ornamental features? I have a couple of quotes that aren't specifically in that context, but one is in Ethicon. At the beginning of the opinion, this court said, after the functional aspects of the claim design are properly excluded from the infringement analysis, there's dissimilarity between the claimed ornamental designs and the ornamental design of the accused product. And the district court mirrored exactly that at Appendix 27 when he said, what's dissimilar here is the ornamental features. And they gave the district court nothing to go off of. Yeah, but the problem is that's a fact finding. This is on summary judgment. And how can this district court conclude at this phase of the litigation that the ornamental features of the overall design is not substantially similar? How does the district court make that determination at this stage of the proceeding? Because they were given opportunity after opportunity to bring forward evidence. Here's what was presented to the district court. You know what? I'm not sure that everybody in the audience knows what this is. So here, I want you all to see. These are the two designs. This is a picture from the patent. This is the accused product. Now, I'm not going to take a survey because I don't do fact finding. But, to me, I don't think I could say, as a matter of law, no reasonable juror could conclude these have an overall similar appearance. Respectfully, Chief Judge. Do I have anything wrong in these pictures? You don't. Isn't this your product and this is the claimed design? If you look at Red Brief 52, it shows the two pictures in Lennard Toys. You could do the exact same exercise. That's not the inquiry. Guess what that was? Summary judgment. Yes, it was. This is summary judgment. That's what Lennard Toys was, too. Okay. The fact that one panel might have done something like that in one instance does not mean that I should do it here. I am looking at, did this district court err when he looked at these two pictures and said no reasonable, ordinary observer could conclude these two overall designs are substantially similar? I know you don't like these pictures. I see you scowling at me, counsel. I'm not scowling. And I know you are scowling. And you do not like these pictures. I understand why. I tell you what, if I have to write a dissent, there's not going to be any words. The dissent's going to be these two pictures. And respectfully, that's exactly what this court has done repeatedly in Ethicon, in Lennard Toys, and in Odds On. At a broad conceptual level, absolutely. The district court fully acknowledged it. They look similar. That's not the question. In Lennard Toys, the court got down into what's ornamental and what's functional in Ethicon. And I want to read you. And that's the point of the claim construction here. That's the whole point of claim construction. And I want to read you something. Under the claim construction, which separates out what's part of the ornamental design and what's not, your view is the district court was correct to say no reasonable person could say the over-ornamental design portion of the drawing is similar.  Precisely. Sure. As a matter of looking at the two pictures, they look similar. The picture is not the ornamental design, all of it. Some of it is functional. We have to look at what is ornamental. And the claim construction here talks about what's ornamental and what's not. Exactly, Judge Hughes. So counsel, tell me what's ornamental such that it should have been excluded from this picture when I compare it to this picture. So tell me. What gets excluded is the functional. No, not in its entirety. Only the extent that it's functional.  The particular shape of the arm, which is a significant feature of their appeal, is functional. And they have identified nothing about that particular increased curve shape that is ornamental. They also focus on the base. I find that utterly perplexing because the base looks completely different. That base is an inverted mushroom. The other base looks like this. But you don't compare individual features to individual features to assess ordinary observer. You're right. I think these two bases, if I were just to drill down on the base, I think the two bases maybe don't reach that level. But you look at the overall design.  And Chief Judge Moore, I want to read something from this court's opinion in odds-on, which much like Lennart... No, I need you to walk me through because all you said is the overall shape of the arm, i.e. the curvature. Yes. That's what you said. The curvature. That's the feet functional. It is undisputed in the record. Well, there's a lot more to this than just the curvature, right? You've got the top here. Yeah. You've got this roll-y thingy, this other roll-y thingy. Those are excluded. How are they all excluded? Because they're in dotted lines, so that means that they're out. Okay, good. All right, fine. That's helpful. And so what the district court said is the only evidence of front weight... What about this part here? That's not excluded, right? This part? Right. And the specific curve is functional. And again... No, no. Which part's functional? This curve? The increased curve, yes. That curve is functional. But what about all this here? The way that it holds... The thick, rigid outlines he said was ornamental. And same with the pinch-in at the top. It's ornamental, but that's different. So wouldn't it be helpful for you to utilize your figures in your brief where there were red boxes and kind of identifying which parts are ornamental versus functional to answer Chief Judge Moore's questions? Yes, it would, Judge Cunningham. And if you're looking at them and can help me get there more quickly... Maybe page 27? Maybe we could go to page 27 of your red brief just to kind of answer some of the questions? Yeah, absolutely. So these were a couple of pieces of the design that the district court said were ornamental. And even, Chief Judge Moore, if you look at the bottom left where the hinge attaches to the arm, it's completely different. On the Arm A2, the accused infringing device... Okay, this is a couple of pieces. You've added these things. The district court didn't do this. This was based on what the district court said. We were highlighting...  This is not the district court. Based on the right. Why don't you tell me, in these two pictures, which parts are functional? So, the parts that are... I mean, the bases are functional. The shape of the arms are functional. The particular number of slots in the hinge apparatus and the size of it is functional. And what the district court said... The handles are functional. What the district court said is what's left is a couple of pieces, like where it pinches into the top and where it meets. And that's what we've drawn out in the pictures. This picture is... Absolutely, we made this. But it's based on what the district court wrote. And what the district court is saying is, once I take the ornamental piece out, which is the whole exercise in design patents, there's very little left. The same was true in sport dimension. You can't take the ornamental piece out. You meant once you take the functional piece out? Is that what you meant to say? That's what I meant to say, yes. Of course you can't take the ornamental piece out. Yes, I misspoke and I apologize for that. Once you take the functional out, there's very little left. That's what this court said in sport dimension. But you can't... You're not... You're taking the... What I'm confused about is that you're taking the functional... Because a curvature is functional, you're saying that now let's just not even look at the arms, right? I'm saying that that's what the district court... Yes, that's what the district court said. Not, let's not look at the arms. And he said repeatedly. I'm still... This is in footnote 10 and it's also in appendix 20. Your honors, we're talking to counsel for ROM. He said, I am very aware that this court said in sport dimension, I can't wholly exclude them. I am taking them into account for their ornamentation. Just to be clear, wait. So he is considering the arms for their ornamentation, correct? What did he say in footnote 10 he's considering? He says, and this is very similar to the court's claim construction in sport dimension, which is that there's minimal ornamentation left. But what he says is... What page is footnote 10? I'm sorry. It's footnote 11 on appendix 26. Appendix 26. He says, although the clamshell arms themselves are functional, I must consider their ornamental aspects and the way they contribute to the overall design. And back at appendix 21 is where he talked about specific pieces of the arms that were ornamental. The thick rigid outlines, the precise shape of the connector pivot. Those are things that are not dictated by the function. And that's how you decide what's ornamental. And Chief Judge Moore, I want to point the court to a particular... Because I think it has a lot to say about this particular case and the way they've litigated as the plaintiffs. In odds on, if you look at the two pictures, they look awfully similar at a broad conceptual letter. Sorry, broad conceptual level. What this court said was, because the accused products are clearly similar to odds on designs in terms of their football shape and their tail fins, it was incumbent on odds on to submit evidence establishing that the ornamental aspects of their football with tail fin combination accounted for the similarity. They didn't do that, and the same is true here. The district court gave them opportunity after opportunity, and they did not come forward with any evidence to show that ornamentation drove the alleged similarity. And I would submit that that's exactly what's going on here, and that this case is... The district court did exactly what this court has told district courts to do in design patent cases, particularly with the record in front of him that they, as plaintiffs, compiled. And I would urge the court to affirm. Unless there are further questions, I'll cede my last minute. Okay. You got some time left.  Well, maybe. I welcome the opportunity. So... Can you... Let's just talk about the arms. What in the arms... And I assume you're talking about that. The district court found that the shape of the arms was functional. Let's assume I agree with that was functional. Then what is error in not looking at that and determining whether there is any genuine issue of material fact on similarities with regard to the arms? So your question is about claim construction. The point of design patents is that it covers a utilitarian article. So necessarily, the arms are going to have a functional purpose. The hinge is going to have a functional purpose. The base may have a functional purpose. Do you agree that there may be some elements that are purely functional and have no ornamentation? I agree that the structural elements, when I describe them to you as the arms, the hinge apparatus, the base, the handle, when I describe those, that's what the purely functional features are when we talk about them at that abstract level. But that's not why we're saying there's infringement here. We're not saying... Certainly, if the general... So what ornamentation on the arms do you think the district court improperly excluded as a matter of claim construction? Respectfully, Your Honor, it's the appearance. That is what... Can you describe what that appearance looks like to a blind person? That's not what the case law says. You have to answer my question. I don't care. It's the shape. You have the internal opening in the arm. You have the curvature of the arm. And this was decided on summary judgment where there's... But that's functional. So you disagree with that. But the record is pretty clear... I disagree that the appearance is functional. You know, there's a perfectly analogous case here. There's Lennard. So the functional analysis does not factor in to the... Can you at least turn to page 27 of the red brief and tell me whether or not you agree with the figure that was created by opposing counsel to mimic what was actually being stated in the district court's decision? We agree that those are the features that were identified as largely ornamental and that highlights the error in the claim construction. Okay. So let's start there here. So you agree that these red boxes that Appalache's counsel created on the bottom of page 27 are what would show the ornamental features and not the functional features, correct? Right. And I would also point out that what is not outlined in red there is the arms or the base. Those were not outlined as having ornamental attributes. But if the design patent is valid, it's presumed that every feature in that patent has some ornamental aspect. And there's also no weighting in claim construction analysis. You don't weight features as largely ornamental or primarily functional in the claim construction analysis. It's functional and it's ornamental. Where is this weighting that you're contending the district court did? Can you point me to a specific page where the district court did the weighting? Yes. So for example, it talks about the features as being primarily ornamental or largely ornamental. I don't... Let's see if I can find a specific page site for you. I mean, I would say appendix 20, largely ornamental, primarily functional. But regardless of the claim construction, right, there was substantial evidence of infringement on this record. The design patent compared to the picture that Judge Moore... The pictures that Judge Moore held up, that was... That's substantial evidence of infringement. We have... That's appendix 48, shows how the accused design fits right inside of the patented design. I mean, they were made from the same molds. The infringement contentions, comparing them from multiple angles. I mean, we have substantial evidence here. Okay, counsel, let me ask you one last question. I just want to... Because your time's up. But the pictures on the bottom, those red boxes, I just want to make sure I understand you don't disagree that those are in fact ornamental features. But if I understand your argument right, and I need you to be clear about this, you're saying there are additional ornamental features in these designs that are also part of the overall design. That's what we're saying. So while these boxes, yes, do highlight some of the ornamental features, you're saying that's not the only ornamental features.  You're saying like, for example, the inner curvature in your claimed arm is ornamental and that's not inconsistent with the district court's opinion. District court's opinion said the outside part of the arm is functional, but he didn't say anything about the inside part.  I mean, the district court's opinion says the fixed arm is the most noticeable feature. So I'm having trouble understanding how whatever the claim construction is, if the fixed arm is the most noticeable feature and the accused design, the fixed arm of that fits exactly in the patented design, how that is not substantial evidence of infringement. Did you provide any sort of figures or counter figures to what I'm saying is on the bottom of page 27 of the red brief in terms of identifying where you contend are all the ornamental features that should be considered? We contend that the overall appearance is ornamental and that's straight from Egyptian goddess, but we do have... Wait, do you have like a counter figure so you see... So we actually... Wait, wait, let me ask and then you answer, okay? So you see that they have a figure, right? They have a figure here on page 27 of the red brief and they identified in their red boxes what they contend the district court indicated were the ornamental features. I'm asking you, do you have a different figure you want to point me to where you identify what you contend are the ornamental features or are you saying you're pointing me to the entirety of the figures that Chief Judge Moore showed? So we have a counter figure, but we actually do agree largely with what... Where's the counter figure? Page 36 of our principal brief is the counter figure. This is what we contend that the district court identified as the largely ornamental features. It's much more narrow, obviously, than what the appellee is pointing to, but it's in the same general area. So that's page 36 of our principal brief. And you can see that we have the handles, the connection between the fixed arm and the hinge apparatus, and we have the shape of the connector pivot. That's what we've circled, and that's directly from the district court's opinion as what he identified as the largely ornamental features, and they're in the same general area as what... But that's not what you think are the ornamental figures. Correct. We think that... You don't have a diagram like this that shows what you think are the ornamental features. And that's to the second point, is that we contend the overall appearance is ornamental because it's a valid design patent. Okay, I thank both counsel. Case is taken under submission. Thank you.